UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:20-CV-00055-TBR

TORI TONI CURTIS                                                    PLAINTIFF

v.

CHRISTIAN COUNTY, KENTUCKY, *et al.*                    DEFENDANTS

MEMORANDUM OPINION AND ORDER

Before the Court is Defendants Lieutenant Deputy Bryan Rives[1] and Captain Thomas

Burd's Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. [DN 64].

Plaintiff did not timely respond. However, Plaintiff did file a variety of additional motions

including a Motion to "Denie all Defendants Summary Judgment,"[2] [DN 73], four Motions to

Compel, [DN 55; DN 67; DN 71; DN 72], two Motions for Execution of Judgment, [DN 61; DN

69], a Motion for Court Order of Subpoena/Request for production of Documents, [DN 68], and a

Motion for Burden of Proof. [DN 70]. For the following reasons, Defendants' Motion for Summary

Judgment is **GRANTED**. [DN 64]. Accordingly, Plaintiff's Motions are **DENIED AS MOOT**.

[DN 55; DN 61; DN 67; DN 68; DN 69; DN 70; DN 71; DN 72; DN 73].

### I.      Background

Plaintiff Tori Toni Curtis brought this civil action under 42 U.S.C. § 1983 concerning an

incident that occurred on November 26, 2019, while he was incarcerated in Christian County Jail.

[DN 1]. Plaintiff listed as Defendants: Christian County, Christian County Judge Executive Steve

Trible, Jailer Bradley Boyd, Chief Deputy Jailer Steve Howard, Lieutenant Deputy Bryan Rives,

---

[1] Defendant Bryan Rives was incorrectly identified as "Brian Reeves" in Plaintiff's Complaint.
[2] This Motion does not address the issues presented in the Defendants' Motion for Summary Judgment, but it does request "more time before deciding to grant the defendants and their counsel their summary judgment." [DN 73]. Although the Court granted Curtis's request for an extension of time, [DN 74], Plaintiff failed to file a response within the extended deadline.

1

Captain Thomas Burd, and eight Christian County Magistrates, all in their individual and official capacities. *Id.* On initial review of the complaint pursuant to 28 U.S.C. § 1915A the Court allowed Plaintiff's excessive-force claim against Defendant Burd in his individual and official capacity and Plaintiff's deliberate-indifference-to-safety claims against Burd and Rives in their individual and official capacities to proceed. [DN 15]. Defendants Burd and Rives now move for summary judgment for all remaining claims. [DN 64].

## II.    Legal Standard

To grant a motion for summary judgment, the Court must find that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986).

In reviewing a motion for summary judgment, the Court must review the evidence in the light most favorable to the non-moving party; however, the non-moving party must do more than merely show that there is some "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the non-moving party must present specific facts showing that a genuine factual issue exists by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence ... of a genuine dispute." Fed. R. Civ. P. 56(c)(1). "The mere existence of a scintilla of evidence in

support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 252. Ultimately, if the record, taken as a whole, could not lead the trier of fact to find for the nonmoving party, then there is no genuine issue of material fact and summary judgment is appropriate. *Matsushita Elec.*, 475 U.S. at 587 (citation omitted).

## III.    Discussion

In their motion for summary judgment, Defendants argue that: (1) Plaintiff failed to exhaust his administrative remedies barring his claims; (2) Plaintiff's claim for excessive force against Defendant Burd, in his individual capacity, fails as a matter of law; (3) Plaintiff's claims of deliberate indifference against Burd and Rives, in their individual capacities, fails as a matter of law; (4) Plaintiff's claims against the Defendants in their official capacities fail as a matter of law; and (5) Defendants are entitled to qualified immunity for all individual capacity claims. The Court will address each argument in turn.

### A.  Failure to Exhaust

The Prison Litigation Reform Act of 1995 ("PLRA") requires a prisoner to exhaust all available administrative remedies before filing any action "with respect to prison conditions" under 42 U.S.C. § 1983 or any other federal law. 42 U.S.C. § 1997e(a). The exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *accord Freeman v. Francis*, 196 F.3d 641, 644 (6th Cir. 1999). Exhaustion is mandatory and the remedies provided "need not meet federal standards, nor must they be 'plain, speedy, or effective.'" *Porter*, 534 U.S. at 524 (quoting *Booth v. Churner*, 532 U.S. 731, 739 (2001)). "Proper exhaustion demands compliance with [the prison's] deadlines and other

critical procedural rules," *Woodford v. Ngo*, 548 U.S. 81, 90 (2006), and so "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion," *Jones v. Bock*, 549 U.S. 199, 218 (2007); *accord Lee v. Willey*, 789 F.3d 673, 677 (6th Cir. 2015).

The grievance policy at the Christian County Jail states:

> Any inmate shall be allowed to file a grievance at such time as the inmate believes he or she has been subject to abuse, harassment, abridgment of civil rights, or denied privileges specified in the posted rules (Grievances must be restricted to incidents which occur while the prisoner is in the custody of the facility). No prisoner shall fear against reprisal for initiating grievance procedures in an attempt to resolve legitimate complaints.

[DN 64-7]. Further, the procedural process requires the grievance "be made in the form of a written statement by the inmate promptly following the incident, sealed in an unstamped envelope, and addressed to the Jailer." *Id.*

In his Complaint, Plaintiff states that he filed a grievance with Jailer Bradley Boyd and Steve Howard but never received a response. [DN 1]. He also states that a copy of said grievance was attached to his Complaint, but there was no such documentation. Plaintiff did, however, attach a copy of a letter he received from the Department of Corrections Jail Services Specialist for the Justice and Public Safety Cabinet, Shameckia Holt, which recommended Plaintiff report the incident with the jailer for investigation and review. [DN 1-1]. Defendant Burd's affidavit states that "[a]ll grievances submitted by inmates are placed in the inmate's file. There is no grievance regarding this incident in the inmate file." [DN 64-5]. Defendants also attached a copy of the Christian County Jail's grievance policy. [DN 64-7]. In prison civil rights litigation, when defendants "move for summary judgment on administrative exhaustion grounds, they must prove that no reasonable jury could find that the plaintiff exhausted his administrative remedies. *Mattox v. Edelman*, 851 F.3d 583, 590 (6th Cir. 2017); *see also Does 8-10 v. Snyder*, 945 F.3d 951, 961 (6th Cir. 2019). Meaning that "summary judgment is appropriate only if defendants establish the

4

absence of a 'genuine dispute as to any material fact' regarding non-exhaustion." *Risher v. Lappin*, 639 F.3d 236, 240 (6th Cir. 2011). Curtis argues that he filed a complaint; Defendants argue that he did not. The Court acknowledges that Defendants' argument is well founded, however, genuine dispute of material fact remains making summary judgment based on failure to exhaust inappropriate, at this time.

### B. Excessive Use of Force

The Eighth Amendment prohibits the Government from imposing "cruel and unusual punishment" upon prisoners. U.S. Const. amend. VIII. However, not every shove or restraint gives rise to a constitutional violation. *See Cordell v. McKinney*, 759 F.3d 573, 580 (6th Cir. 2014). That's because sometimes "[t]he maintenance of prison security and discipline may require that inmates be subjected to physical contact actionable as assault under common law." *Combs v. Wilkinson*, 315 F.3d 548, 556 (6th Cir. 2002). Prison officials nonetheless violate the Eighth Amendment when "their 'offending conduct reflects an unnecessary and wanton infliction of pain.'" *Cordell*, 759 F.3d at 580 (quoting *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011)).

An Eighth Amendment excessive force claim has both a subjective component and an objective component. *See Cordell*, 759 F.3d at 580 (citing *Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013)). The subjective component focuses on the state of mind of the prison officials. *See id.* Therefore, under the subjective component, a court must ask "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* (quoting *Hudson v. McMillian*, 503 U.S. 1, 7 (1992)). In *Hudson v. McMillian*, the Supreme Court held that this analysis is guided by a number of factors, including: (1) "the extent of the inmate's injury;" (2) "the need for the application of force;" (3) "the relationship between that need and the amount of force used;" (4) "the threat that the officials reasonably perceived;" and (5) "any

efforts to temper the severity of a forceful response." 503 U.S. at 7. By contrast, the objective

component focuses on the force that the corrections officers used. *See id.* The objective component

requires that the pain inflicted be "sufficiently serious," *id.* (quoting *Williams*, 631 F.3d at 383), to

offend "contemporary standards of decency," *id.* (quoting *Hudson*, 503 U.S. at 8). "While the

extent of a prisoner's injury may help determine the amount of force used by the prison official, it

is not dispositive of whether an Eighth Amendment violation has occurred." *Id.* at 580–81 (citing

*Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010)).

Plaintiff alleges that Defendant Burd's use of the taser when extracting him from his cell

was excessive because:

> I done exactly as I was directed, never showed any signs of not following orders,
> or never showing any signs of self harm, or harm to others!! When the deputies
> opened the cell door I inmate Tori Curtis was shot in my right buttock [sic] with
> the probes [sic] of deputy Captain Burd x2 taser [sic] gun, and I was electro-
> shocked very painfully, I screamed out in pain, spun and dropped to the ground on
> my belly-(stomach).

[DN 1]. Conversely, Defendant Burd argues that given the "risks surrounding this particular

situation in the days and moments leading up to the cell entry … the use of the taser was the least

amount of force [necessary] to maintain safety and order within the Christian County Jail." [DN

64-1 at 12].

i.   **Subjective**

The five *Hudson* factors guide this analysis. First is the extent of the injury. *See Hudson*,

503 U.S. at 7. Plaintiff states that when he was tased he "screamed out in pain," but he does not

complain of any injuries resulting from the incident. [DN 1]. Because Curtis does not allege that

Burd's use of the taser resulted in an injury, this factor weighs in favor of Defendant.

The next two *Hudson* factors—the need for the application of force, and the relationship

between that need and the amount of force used—will be addressed together. *See Hudson*, 503

6

U.S. at 7. Plaintiff alleges that there was no need for the use of the taser because he was doing as he was directed, showed no signs of disobeying, and was not showing signs of harm to himself or to others. [DN 1]. Defendant Burd contends that "the use of the taser was the minimum amount of force necessary in [his] opinion based on the circumstances at the time as [he] perceived them." [DN 64-5] Force is not needed when an inmate is under control and not resisting. *See, e.g., McKinney v. Lexington-Fayette Urb. Cty. Gov't*, 651 F. App'x 449, 465 (6th Cir. 2016). However, given the undisputed facts leading up to the tasing—particularly, Curtis's admission that he was visibly upset and had just thrown feces all over the cell—the amount of force Burd used was reasonably related to the need for force, regardless of Curtis's momentary compliance. *See, e.g., Barnes v. Dedmondt*, No. CA 4:08-0002-MBS, 2009 WL 3166576 at *9 (D.S.C. Sept. 29, 2009), *aff'd,* 395 F. App'x 928 (4th Cir. 2010), and *aff'd,* 395 F. App'x 928 (4th Cir. 2010) (explaining the heightened risk associated with a violent history and the presence of bodily fluids). Both of these factors weigh in favor of Defendant.

The fourth *Hudson* factor is the threat that the officials reasonably perceived. *See Hudson*, 503 U.S. at 7. As stated above, both parties agree that moments before the tasing Curtis was visibly upset and threw a cup of human waste all over his cell. Defendant Burd further argues that:

> the likelihood of exposure to human feces, Plaintiff's disregard for his own life and safety, Plaintiffs recent history of possession of a shank while incarcerated, and Plaintiff's reluctance and demeanor prior to entry into the cell were all present and created a scenario that is subjectively one where the use of the taser was appropriate.

[DN 64-1]. It is reasonable for Burd to perceive such behavior as threatening. *See Barnes*, No. CA 4:08-0002-MBS, 2009 WL 3166576 at *9. This factor weighs in favor of Defendant.

The last *Hudson* factor asks whether Burd took any efforts to temper the severity of a forceful response. *See Hudson*, 503 U.S. at 7. There is no evidence regarding this factor.

7

Accordingly, at this stage of the proceedings, this factor weighs in favor of Plaintiff. *See Cordell*, 759 F.3d at 583–84 ("[T]here is no evidence in the record that [the officer] made any effort to moderate the force he used against [the inmate] except his bare assertion that he 'used the minimum amount of force necessary to control ... [the inmate].'").

Four of the five *Hudson* factors favor Defendant Burd. Therefore, upon considering the *Hudson* factors and the parties' factual allegations, the Court finds that Burd's use of force was applied in a good-faith effort to maintain or restore discipline.

ii. **Objective**

Based on the parties' pleadings and evidence, the Court finds that a jury could not conclude that the "pain inflicted by" Burd was "sufficiently serious" to offend "contemporary standards of decency." *Cordell*, 759 F.3d at 580 (quoting *Williams*, 631 F.3d at 383). The record, read in Plaintiff's favor, reveals that Curtis was tased one time when Defendant Burd entered his cell. [DN 1 at 5]. This occurred immediately after Curtis smeared feces and other bodily fluids on the walls and door of his cell—facts which Plaintiff admits to. [*Id.* at 4–5]. Defendant Burd does not deny that Curtis complied with his orders to "raise his hands, place them on the rear wall, and stand with his legs open;" however, Burd states that there was a heighted threat of harm due to: 1) Curtis's disregard for his own life, 2) Curtis's previous possession of a metal shank, 3) Curtis's history of altercations in combinations with his demeanor and actions at the time of entry, and 4) the general threat of the presence of feces in the cell and on Curtis's person. [DN 64-5].

Defendant Burd's use of the taser upon entry into Plaintiff's cell was not repugnant to the conscience of mankind. Although Curtis complains of the pain momentarily caused by the taser, these facts do not reveal an Eighth Amendment excessive force violation. Particularly, the pain Burd inflicted upon Curtis was not sufficiently serious to offend contemporary standards of

8

decency as is required by the objective standard of an excessive force claim. Further, the parties' do not dispute any material fact. Accordingly, Defendant Burd is entitled to summary judgment on the excessive use of force claim.

### C. Deliberate Indifference

"A prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 828 (1994) (citations omitted). While "[t]he Constitution does not mandate comfortable prisons," the United States' founding document does not "permit inhumane ones [either], and it is now settled that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Id.* at 832 (internal citations omitted). Relevant to this case, the Eighth Amendment "imposes duties on ... officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" *Id.* (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)).

"To raise a cognizable constitutional claim for deliberate indifference to an inmate's safety, an inmate must make a two-part showing: (1) the alleged mistreatment was objectively serious; and (2) the defendant subjectively ignored the risk to the inmate's safety." *Bishop v. Hackel*, 636 F. 3d 757, 766 (citing *Farmer*, 511 U.S. at 834). "On balance, the deliberate indifference analysis is 'fact-bound and dependent on both witness credibility and those inferences that a jury can reasonably draw from the relevant circumstances. This inquiry 'is therefore ill-suited for summary judgment in all but the clearest cases.'" *McCracken v. Haas*, 324 F. Supp. 3d 939, 947 (E.D. Mich. 2018) (quoting *Doe v. District of Columbia*, 215 F.Supp.3d 62, 77 (D.D.C. 2016)).

Based on a reading of the Complaint, Plaintiff's deliberate indifference claim arises out of Defendants' use of the restraint chair, and the alleged medical issues that resulted:

> I had a medical injury done to my left ankle and foot – (leg) due to me being in the restraint chair that cut off my blood circulation to my ankle & legs. I had a big size sore on my outer left ankle that was continually [sic] draining, leaking [sic] fluids from it and I couldn't walk properly for 3 or 4 days. I saw [sic] the medical nurses here at Christian County Jail and was prescribed orally to take some steroid pills called 'prednisone [sic] and Bactrim.'

[DN 1]. Plaintiff further alleges that due to his type one diabetes, the restraint chair caused cramps, sores, and numbness to different parts of his body. *Id.* None of these allegations were supported by documentation. Defendants, however, submitted a sick call request form dated November 22, 2019—four days before the incident in question—where Curtis requests "to be seen about [his] feet." [DN 64-9]. Defendants argue that their actions did not show 'deliberate indifference' to a substantial risk of serious harm to Curtis. [*See* DN 64-1]. The Court will address both the subjective and objective components of the deliberate indifference claim in part.

### i. Subjective

The subjective component requires a showing that an official acted with a sufficiently culpable state of mind. *See Darrah v. Krisher*, 865 F.3d 361, 368 (6th Cir. 2017) (quoting *Farmer*, 511 U.S. at 834). This means that, at the summary judgment stage, "the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Id.* (quoting *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001)). "Because government officials do not readily admit the subjective component of this test," it may be demonstrated through "inference from circumstantial evidence." *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 550 (6th Cir. 2009) (quoting *Terrance v. Northville Reg'l Psychiatric Hosp.*, 286 F.3d 834, 843 (6th Cir. 2002)); *see also Finley v. Huss*, 723 F. App'x 294, 298 (6th Cir. 2018).

The subjective component focuses on the individual officer's own knowledge and actions; as such, each defendant will be considered separately. *See Bishop*, 636 F. 3d at 767.

### a. Defendant Burd

Regarding his deliberate indifference claim against Burd, Plaintiff states that Burd put him in the restraint chair, wheeled him next to the booking station, and left him there for the remainder of his shift. [DN 1]. Curtis does not provide a time for when he was placed in the chair or when he was released but alleges that he remained in the restraint chair for a total of twelve hours. *Id.* Apart from the duration of Plaintiff's time in the restraint chair, Defendant Burd's affidavit does not contradict Curtis's complaint. However, he does explain that Plaintiff was placed in the restraint chair because he was still visibly upset and was threatening the guards. [DN 64-5]. Burd also states that all jail policies were complied with, and Curtis's vitals were taken upon his placement in the restraint chair. *Id.* Curtis does not contest these facts. According to the Christian County Jail Surveillance Form, Plaintiff was placed in the restraint chair at approximately 2:30 p.m. and Defendant Burd left the jail when his shift ended at 3:30 p.m. [*Id.*; DN 64-6].

Plaintiff failed to provide any evidence that Defendant Burd "subjectively perceived facts from which to infer substantial risk" to Curtis. Conversely, Plaintiff states that Burd placed a disruptive, suicidal inmate in the restraint chair to calm down after throwing feces across his room. The time that Curtis spent in the restraint chair under Defendant Burd was approximately an hour, in which time Plaintiff's vitals were checked and he was observed by officers at least two additional times. [*See* DN 64-6]. The Court finds that Defendant Burd did not act with "a sufficiently culpable state of mind" and therefore was not deliberately indifferent to a substantial risk of harm to Curtis when he placed him in the restraint chair. As such, the subjective competent for Defendant Burd is not satisfied and summary judgment for this claim is appropriate.

### b. Defendant Rives

Plaintiff claims that during his alleged 12 hours in the restraint chair he requested time to stretch or to be removed from the restraint chair but was ignored by Defendant Rives. [DN 1]. Curtis argues that Rives was deliberately indifferent to the substantial risk of harm Plaintiff was in by spending extended time in the restraint chair. *Id.* Conversely, Rives argues that there was no substantial risk "outside the realm of life's necessities," and even if there had been, that he acted "appropriately upon that risk by providing finger food and continuing checks." [DN 64-1].

As stated above, Plaintiff has failed to present sufficient evidence for a deliberate indifference claim. He does not contest that he was checked on regularly and offered food while in the restraint chair. The surveillance log provided by Defendants shows that Curtis was checked on approximately every 15 minutes and was placed near the booking station for further monitoring. [DN 64-6; DN 64]. These facts do not support a claim for deliberate indifference to Curtis's safety. Even if, as Plaintiff alleges, he was in the restrain chair for 12 hours, as addressed below, Curtis was not deprived of life's necessities. *See Farmer*, 511 U.S. at 834.  Further, Plaintiff has provided no evidence that Rives "perceived facts from which to infer substantial risk" to Curtis, "that he did in fact draw the inference, and that he then disregarded that risk." Conversely, Rives contends that he came on shift at 3:30 p.m., was informed of the incident involving Curtis, monitored the situation, followed protocol, and released Plaintiff when he was calm enough to no longer be a threat to himself or others. [DN 64-10]. By failing to timely respond, Curtis again does not contest these facts. As such, Defendant Rives does not satisfy the subject requirement of a deliberate indifference claim.

### ii.   Objective

The objective component is satisfied if the plaintiff is "incarcerated under conditions posing a substantial risk of serious harm." *Curry v. Scott*, 249 F.3d 493, 506 (6th Cir. 2001). The Sixth Circuit "analyze[s] the objective component 'in the abstract.'" *Richko v. Wayne Cty., Mich.*, 819 F.3d 907, 916 (6th Cir. 2016) (quoting *Clark–Murphy v. Foreback*, 439 F.3d 280, 286–87 (6th Cir. 2006)). The alleged actions must be "sufficiently serious" enough to "result in the denial of 'the minimal civilized measure of life's necessities.'" *Farmer*, 511 U.S. at 834 (internal citations omitted). "For a claim (like the one here) based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Id.* (citing *Helling v. McKinney*, 509 U.S. 25, 35 (1993).

The primary fact disputed between the parties is the length of time that Curtis was confined to the restraint chair. Plaintiff asserts that he was in the restraint chair twelve hours. [DN 1]. Conversely, Defendants claim that Curtis was "placed in a restraint chair for six and one-half hours with observation and finger food being given four hours after." [DN 64]. Even looking at the facts in light most favorable to Plaintiff, the Court does not find Plaintiffs alleged 12-hour period in the restraint chair to be "sufficiently serious" enough to "result in the denial of the minimal civilized measure of life's necessities." *See Farmer*, 511 U.S. at 834. Many courts have previously held that prolonged periods in a restraint chair, when appropriate, do not satisfy the requirements of a deliberate indifference claim. *See, e.g.*, *Blakeney v. Rusk Cty. Sheriff*, 89 F. App'x 897 (5th Cir. 2004) (twenty hours in a restraint chair did not prove deliberate indifference); *Pew v. Harris*, No. 3:12-CV-01984, 2017 WL 6997335 at *4 (M.D. Pa. Nov. 9, 2017) (collecting cases) (providing a range of examples between nineteen and fifty-hours where deliberate indifference was not found when there was a "reasonable justification" for the extended use of restraints). Conversely, courts

have found Eighth Amendment violations where the prolonged restraints were objectively unreasonable, or "purely punitive." *See Young v. Martin*, 801 F.3d 172 (3d Cir. 2015) (inmate confined to a restraint chair naked for fourteen hours seated next to the air conditioning); *Hope v. Pelzer*, 536 U.S. 730 (2002) (shirtless inmate tied to a hitching post in the direct sun for seven hours, taunted by officers, and provided only a minimal amount of water).

Plaintiff was placed in the restraint chair to ensure the safety of both Curtis and the prison staff. This was done only after Plaintiff had thrown a cup of his own bodily fluids all over his cell and himself. The restraint chair was used as a means of controlling an unruly prisoner and to prevent further damage. While in the restraint chair, Curtis's vitals were checked, he was provided "finger foods," the restraints where checked, and he was placed next to booking for continual observation. [*See* DN 1; DN 64]. Nothing in the record provides evidence of deliberate indifference to Curtis's safety. As such, summary judgment is appropriate for this claim.

### D.  Official Capacity and Failure to Train Claims

Bringing 42 U.S.C. § 1983 claims against Defendants in their official capacities is tantamount to suing their employer, Christian County. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). "[A] municipality cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978) (emphasis in original); *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994); *Berry v. City of Detroit*, 25 F.3d 1342, 1345 (6th Cir. 1994). "[T]he touchstone of 'official policy' is designed 'to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.'" *City of St. Louis v.*

*Praprotnik*, 485 U.S. 112, 138 (1988) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479–80 (1986)) (emphasis in *Pembaur*).

A municipality cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation. *Monell*, 436 U.S. at 691; *Deaton v. Montgomery Cty., Ohio*, 989 F.2d 885, 889 (6th Cir. 1993). Simply stated, the plaintiff must "identify the policy, connect the policy to the city itself and show that the particular injury was incurred because of the execution of that policy." *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993) (quoting *Coogan v. City of Wixom*, 820 F.2d 170, 176 (6th Cir. 1987), *overruled on other grounds by Frantz v. Vill. of Bradford*, 245 F.3d 869 (6th Cir. 2001)). The policy or custom "must be 'the moving force of the constitutional violation' in order to establish the liability of a government body under § 1983." *Searcy*, 38 F.3d at 286 (quoting *Polk Cty. v. Dodson*, 454 U.S. 312, 326 (1981) (citation omitted)); *Bd. of Cty. Comm'rs of Bryan Cty., Okla. v. Brown*, 520 U.S. 397, 404 (1997) (indicating that plaintiff must demonstrate "deliberate conduct").

In addition to suing both remaining defendants in their official capacities for the claims above, Plaintiff's Complaint states: "Due to the defendants actions [the] municipality can, and should be liable for Christian County's [sic] failure to train its [sic] employees when the municipality's failure shows 'a deliberate indifference' to the rights of its [sic] inhabitants." Conversely, Defendants argue that Plaintiff failed to "assert an unconstitutional custom, policy, or practice attributable to the County," therefore, all of Plaintiff's claims against Christian County, including the official capacity claims, are barred pursuant to *Monell*, and summary judgment should be granted. [DN 64-1 at 22]. The Court agrees with the defendants.

i.      **Official Capacity Claims**

To assert a § 1983 claim against a defendant such as Christian County, the Court must determine: (1) whether the plaintiff's harm was caused by a constitutional violation; and (2) if so, whether the county is responsible for that violation. *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992). Assuming Plaintiff could prove that the Defendants violated his constitutional rights, in order to recover against Christian County, Plaintiff would be required to prove that the actions or inactions of Defendants were done pursuant to a "policy or custom" attributable to Christian County and that this policy or custom was the "moving force" behind the deprivation of rights. *Miller v. Sanical County*, 606 F.3d 240, 254–55 (6th Cir. 2010) (citing *Monell*, 436 U.S. at 694). A "custom" for purposes of *Monell* liability must be "so permanent and well settled as to constitute a custom or usage with the force of law." *Monell*, 436 U.S. at 691–92. Essentially, a "custom" is a "legal institution" not memorialized by written law. *See Feliciano v. City of Cleveland*, 988 F.2d 649, 655 (6th Cir. 1995).

The policy or custom must play a part in the violation of federal law—a causal connection is required. Considerably more proof than a single incident is necessary to establish both the requisite fault on the part of the municipality, and the casual connection between the policy and the constitutional deprivation. *Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985). In the instant case, Plaintiff did not allege that Defendants acted pursuant to a municipal policy or custom in causing his alleged harm. Plaintiff's claim appears to be an isolated occurrence affecting only Plaintiff. *See Fox v. Van Oosterum,* 176 F.3d 342, 348 (6th Cir.1999) ("No evidence indicates that this was anything more than a one-time, isolated event for which the county is not responsible."). As nothing in the complaint demonstrates that Defendants' actions occurred as a result of a policy

or custom implemented or endorsed by Christian County, the complaint fails to establish a basis of liability against the municipality and fails to state a cognizable § 1983 claim against it.

Moreover, a municipal liability claim under *Monell* requires a plaintiff to first establish that a constitutional violation occurred. *Bowman v. Corr. Corp. of Am.*, 350 F.3d 537, 545 (6th Cir. 2003) (citing *Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (per curiam) ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the use of constitutionally excessive force is quite beside the point.")). As shown above, Plaintiff failed to do so. Accordingly, his *Monell* claim fails, and summary judgment is granted for the official capacity claims.

### ii.     Failure to Train

Similarly, to impose a failure to train claim against Christian Country, Curtis must "identify and describe the official policy or custom that resulted in a constitutional violation." *Bennett v. Young*, No. 3:16-CV-169-DJH-DW, 2018 WL 1575828, at *6 (W.D. Ky. Mar. 30, 2018) (citing *Horn v. City of Covington*, No. 14–73–DLB–CJS, 2015 WL 4042154, at *4 (E.D. Ky. July 1, 2015)). Deliberate indifference can be shown "in two ways: (1) by pointing to 'prior instances of unconstitutional conduct demonstrating that [Defendants] had notice that the training was deficient and likely to cause injury but ignored it,' or (2) by alleging 'a single violation of federal rights, accompanied by a showing that [Defendants] had failed to train its employees to handle recurring situations presenting an obvious potential for such a violation.'" *Id.* (citing *Harvey v. Campbell Cty., Tenn.*, 453 Fed.Appx. 557, 562–63 (6th Cir. 2011)). "Deliberate indifference based on a single violation of rights, however, requires 'a complete failure to train … that is so reckless or grossly negligent that future … misconduct is almost inevitable or would properly be characterized as substantially certain to result.'" *Id.*

17

Plaintiff has failed to provide any evidence of an unconstitutional Christian County policy or custom. Curtis did not provide the Court with any "prior instances of unconstitutional conduct," nor were Defendants so void of training that constitutional violations were "substantially certain to result." Accordingly, Plaintiff has failed to establish a genuine issue of material fact and the Defendants are entitled to summary judgment for both the official capacity and failure to train claims.

### E.  Qualified Immunity

"Qualified immunity shields government officials in the performance of discretionary functions from standing trial for civil liability unless their actions violate clearly established rights of which a reasonable person would have known." *Heykoop v. Mich. State Police*, No. 19-1688, 838 Fed. Appx. 137, 2020 WL 7383685, at *3 (6th Cir. Dec. 16, 2020) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). When considering a qualified immunity claim in the context of a motion for summary judgment in a § 1983 case, the Court must engage in a two-step analysis. *See id.* First, the Court asks whether "the facts ... alleged or shown [by the plaintiff] make out a violation of a constitutional right." *Id.* (quoting *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)) (internal quotation marks omitted). If the Court finds that a constitutional right was violated, it next asks whether that right was "clearly established" at the time of the alleged misconduct. *See id.* (citing *Pearson*, 555 U.S. at 232). For a right to be clearly established, "the right's contours [need to be] sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *See Cordell*, 759 F.3d at 588 (quoting *Plumhoff v. Rickard*, 572 U.S. 765, 778–79 (2014)). The burden rests on the plaintiff to show that a clearly established right was violated. *See Judd v. City of Baxter, Tennessee*, 780 F. App'x 345, 347 (6th Cir. 2019) (citation omitted). At the summary judgment stage, the plaintiff must at least provide sufficient

evidence to create a genuine issue of fact with respect to this issue. *See id.* (citation omitted). On this point, it is important to note that, "where the legal question of qualified immunity turns upon which version of the facts one accepts, the jury, not the judge, must determine liability." *Id.* at 349 (quoting *Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 900 (6th Cir. 2004)).

The Court has already found that Curtis has not presented sufficient facts to establish a violation of a constitutional right. The acts by the Defendants at the time they were taken were reasonably necessary. Without evidence of a constitutional violation, Defendants are entitled to qualified immunity. However, even if a constitutional violation did occur, the second factor— whether that right was "clearly established" at the time of the alleged misconduct—still entitles Defendants to qualified immunity.

Curtis has not provided evidence that a reasonable official would have clearly understood that he or she had a duty to refrain from such conduct. Moments prior to the use of the taser, Curtis had been visibly upset and smeared feces and other bodily fluids in his cell. Regardless of Curtis's momentary compliance with orders to stand with his arms up, a reasonable officer—knowing Plaintiff's history since incarceration—could have deemed the situation dangerous with the need for force to ensure both officer and prisoner safety. *See, e.g., Hagans v. Franklin Cty. Sheriff's Off.*, 695 F.3d 505 (6th Cir. 2012) (explaining the "clearly established" right requirement of qualified immunity particularly in relation to the use of a taser). Further, a reasonable officer could have deemed the use of the restraint chair necessary to maintain order in the prison, and to allow time for Curtis to calm down after his disruptive incident. *See Hanson v. Madison Cty. Det. Ctr.*, 736 F. App'x 521 (6th Cir. 2018) (stating that the use of the restraint chair for extended period of times is not a "clearly established" violation of law).

Given the limited options available with the particular circumstances of this case, the officers' actions were "for the penological interest of maintaining order." See *Caldwell v. Moore*, 968 F.2d 595, 600–02 (6th Cir. 1992). The totality of the circumstances, even when viewed in the light most favorable to Curtis, leads the Court to the conclusion that Defendants' actions were a good faith effort to maintain and restore discipline, not an unnecessary and wanton infliction of pain. Further, based on the circumstances created by Curtis, his right to remain free from the type of force used (tasing and the restraint chair) was not clearly established. Therefore, Defendants' motion for summary judgment is granted.

## IV.     Conclusion

For the reasons stated above, **IT IS HEREBY ORDERED**:

1. Defendants' Motion for Summary Judgment is **GRANTED**. [DN 64].

2. The Clerk of Court is **DIRECTED** to **DISMISS** the case.

3. Plaintiff's Motion to Compel is **DENIED AS MOOT**. [DN 55].

4. Plaintiff's Motion for Execution of Judgment is **DENIED AS MOOT**. [DN 61].

5. Plaintiff's Motion to Compel to Produce Camera Footage is **DENIED AS MOOT**. [DN 67].

6. Plaintiff's Motion for Court Order of Subpoena/Request for production of Documents to third Party Listed is **DENIED AS MOOT**. [DN 68].

7. Plaintiff's Motion for Execution of Judgment is **DENIED AS MOOT**. [DN 69].

8. Plaintiff's Motion for Burden of Proof is **DENIED AS MOOT**. [DN 70].

9. Plaintiff's Motion to Compel Discovery is **DENIED AS MOOT**. [DN 71].

10. Plaintiff's Motion to Compel Electronically Stored Information is **DENIED AS MOOT**. [DN 72].

11. Plaintiff's Motion "to Denie all Defendants Summary Judgment" is **DENIED AS**

**MOOT**. [DN 73].

**IT IS SO ORDERED**.

**Thomas B. Russell, Senior Judge**
**United States District Court**

May 23, 2022

cc: Counsel

**Tori Toni Curtis**, *pro se*
226115
EASTERN KENTUCKY CORRECTIONAL COMPLEX
200 Road to Justice
West Liberty, KY 41472